## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                           Case No. 04-80200

RICHARD R. MORRIS,         Honorable Arthur J. Tarnow
                                   United States District Judge

       Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION
## TO REMAND [17]

## I.  INTRODUCTION

This case requires the Court to examine the contours of Project Safe
Neighborhoods, a joint effort of the United States and the State of Michigan to
address the problem of gun violence.  The program aims to prosecute persons
charged with being a felon in possession of a firearm, under either state or federal
law.  Defendant, Richard Morris, was initially charged in state court with (1) felon
in possession of a firearm, in violation of M.C.L. § 750.224(f); (2) possession
with intent to distribute marijuana, in violation of M.C.L. § 333.7401; and (3)
possession of a firearm during a drug crime, in violation of M.C.L. § 750.227(b).
The Wayne County circuit judge assigned counsel shortly before Morris, who was
confined in the Wayne County Jail, was to appear in court for a pre-preliminary
examination as part of Project Safe Neighborhoods.

*U.S. v. Morris*
04-80200

At the time of the pre-preliminary examination, the prosecution made an offer – one to four years for the marijuana charge, plus two consecutive years for the felony firearm charge. The offer required an immediate decision by Morris. If he declined, he would be referred to federal court to answer charges which could result in a more severe sentence.[1] Morris's attorney, who may or may not have received complete discovery at the time, was able to speak only briefly with her client in the "bull pen,"[2] where she had to communicate through a meshed screen in the presence of other detainees. She informed Morris of the options presented.[3]

Morris was not prepared to accept the offer without more time and information. Nonetheless, he was taken into the pre-preliminary examination, where the judge told him that, if he did not accept the plea offer, he would be referred to federal court, where the charges could result in a more severe sentence. Morris was not able to discuss his options privately with his attorney. His attorney did not have knowledge of the strength of the case; nor was she given time to

---

[1]There is some dispute as to when assigned counsel learned of the plea offer and the potential sentence in federal court. Given the short time of representation, it is irrelevant.

[2]A "bull pen" is a cell located behind a courtroom. It is usually crowded with detainees and requires attorneys and clients to shout their communication. Attorneys, court personnel, and officers often walk the corridor where the bull pen is located, further diminishing attorney-client privacy.

[3]The option of asking for more time to consider the offer was problematic, as there was no assurance that a recess would be granted. In addition, counsel's $40 fee for the first appearance would not be increased, giving her no incentive to request a new date.

*U.S. v. Morris*
04-80200

investigate or interview witnesses.  He rejected the State's offer and was referred to federal court.

Morris filed the instant motion to remand on the ground that he was denied effective assistance of counsel.  The government responds that counsel was adequate and that, even if inadequate, Morris suffered no prejudice.

For the reasons which follow, the Court concludes that, because the state court procedure constructively denied Morris counsel, a showing of prejudice is not required.  Additionally, if prejudice were required, counsel's failure to adequately inform Morris of the likely consequences of rejecting the plea offer resulted in prejudice warranting relief.  The proper remedy is to remand the matter to state court to reinstate the original plea offer and to give Morris adequate time to make an informed decision.

## II.  FACTS AND PROCEDURAL HISTORY

On February 25, 2004, Morris was arraigned in state court on charges of possession and delivery of marijuana, felon in possession of a firearm, and felony firearm, in violation of M.C.L. sections 333.7401, 750.224(f), and 750.227(b), respectively.  He requested and was assigned counsel on February 26, 2004, the date on which communication between state and federal authorities began.  On the date of the pre-preliminary examination, March 3, 2004, he met his attorney for the first time.  She advised him of a state plea offer as well as the federal sentencing

guideline range as she understood it.  The offer encompassed the charges of possession with intent to deliver marijuana and felony firearm and included a sentence of one to four years for the marijuana count, plus two consecutive years for felony firearm.

Based on an estimate given to the state prosecutor by the Assistant United States Attorney, Morris's attorney advised him that the federal sentencing guidelines range was 62 to 68 months, when, in actuality, it was 90 to 97 months if he accepted a Rule 11 plea.  Otherwise, the range would be or 101 to 111 months.

On March 3, 2004, Morris's attorney received discovery materials, including copies of the police incident reports.  She also met Morris for the first time and conveyed the plea offer to him.  At the pre-preliminary examination that same day, Morris refused to waive a preliminary examination or to accept the State's offer.[4] The State dismissed its case on March 5, 2004, and referred Morris to federal prosecution pursuant to Project Safe Neighborhoods.

The government filed an indictment in this Court on March 18, 2004.  On September 9, 2004, Morris filed a motion to remand to state court on the ground that his trial attorney's failure to properly advise him of the applicable federal sentencing range, in conjunction with the system of attorney assignment, denied

---

[4]The pre-preliminary examination procedure was established to reduce jail overcrowding by expediting cases via acceptance of plea offers.

*U.S. v. Morris*
04-80200

him his Sixth Amendment right to counsel.  The Court conducted evidentiary

hearings on March 31, 2005, and April 6, 2005.

## III.  ANALYSIS

### A.    Whether Project Safe Neighborhoods Involves a "Relationship" Between State and Federal Prosecutors

The Court must first decide whether Project Safe Neighborhoods is a joint

effort between state and federal prosecutors.  The government contends that Project

Safe Neighborhoods is not a "relationship" between federal and state agencies.

However, according to a press release sent to the defense bar:

> Project Safe Neighborhoods is a joint program between the United
> States Attorney, Wayne County Prosecutor, Bureau of Alcohol,
> Tobacco and Firearms (ATF) and the Detroit Police Department.

A Project Safe Neighborhoods fact sheet states:

> Project Safe Neighborhoods requires unprecedented partnership and
> coalition building between all levels of government – it unites the
> efforts of federal, state, and local law enforcement and prosecutors in
> an intensified attack against gun crime.

Federal funds have been used to hire new federal and state prosecutors, as well as

provide training.

Additionally, the nature of the relationship has already been determined by

the United States Court of Appeals for the Sixth Circuit in *United States v.*

*Mitchell,* 111 Fed. Appx. 826 (6th Cir. 2004) (unpublished).  The Court wrote:

*U.S. v. Morris*
04-80200

> When [the defendant] declined a plea bargain in state court, his case
> was referred to the United States Attorney for the Eastern District of
> Michigan pursuant to Project Safe Neighborhoods, *a federal-state
> cooperative program* aimed at reducing gun violence.

*Id.* at 828 (emphasis added).  Given this cooperative relationship, this Court has the

power to remedy any constitutional errors.[5]

### B.    Whether the Pre-Preliminary Examination Procedure Was a Critical Stage of the Proceedings

The Court must next determine whether the pre-preliminary examination

procedure was a critical stage of the proceedings.  The Sixth Amendment right to

counsel attaches at all critical stages of a criminal proceeding.  *Powell v. Alabama*,

287 U.S. 45, 57 (1932).  Several cases make clear that the period between

appointment of counsel and the start of trial is indeed a critical stage for Sixth

Amendment purposes.  *See, e.g., Rompilla v. Beard*, __ U.S. __, 2005 WL

1421390, *8-9 (June 20, 2005).  *See also United States v. Gouveia,* 467 U.S. 180,

187-88 (1984) (explaining that the right to counsel attaches after "adversary

judicial proceedings" have begun, "whether by way of formal charge, preliminary

hearing, indictment, information or arraignment").  In *Powell,* the Supreme Court

described the pre-trial period – the time of the arraignment until the beginning of

---

[5]The finding of a joint enterprise with regard to Project Safe Neighborhoods is based on public statements as well as testimony at the hearing.  Those documents which the government submitted *in camera* and referred to as non-public were not used in making this finding.

*U.S. v. Morris*
04-80200

trial – as perhaps the most critical time of the proceedings.  *Powell*, 287 U.S. at 57.

Decisive moments of the pre-trial stage certainly constitute a critical stage in a proceeding.  *United States v. Wade*, 388 U.S. 218, 236-37 (1967); *Hamilton v. Alabama*, 368 U.S. 52, 54-55 (1961).  In *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 437-38 (3d Cir. 1982), the court explained that the plea bargaining stage is a critical stage at which the right to effective assistance of counsel attaches.  Indeed, guidance is so essential a protection during plea bargaining and in making a decision to plead guilty that a plea entered in the absence of such guidance must be set aside.  *Id.*  Furthermore, in a plea offer situation, counsel is obligated to –

> advise the defendant [after appropriate investigation] of the alternatives available and address considerations deemed important by defense counsel or the defendant in reaching a decision.  Defense counsel should not recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed.

1 ABA Standards for Criminal Justice 14-3.2(b).

Given that the pre-preliminary examination was part of the pre-trial proceeding and a plea bargain was offered during this stage, the pre-preliminary examination was indeed a critical stage of the proceedings.


   **C.    Whether the Wayne County Pre-Preliminary Examination Procedure and System of Assignment Resulted in a Constructive Absence of Counsel**

-7-

*U.S. v. Morris*
04-80200

**1.     The standard for evaluating claims of constructive absence of counsel**

The test for evaluating claims of constructive absence of counsel was set forth in *United States v. Cronic,* 466 U.S. 648 (1984).  The *Cronic* standard governs cases involving constructive absence of counsel.  The defendant must show a deficiency of counsel stemming from the structure of the proceeding.  A showing of prejudice is not necessary.  *Mitchell v. Mason*, 325 F.3d 732, 741-42 (6th Cir. 2003), *cert. denied* 125 S. Ct. 861 (2005).  Instead, there is a presumption of prejudice.  This presumption exists because circumstances are such that it is unlikely that any lawyer could provide effective representation.  *Cronic*, 466 U.S. at 660.  *Cronic*'s presumption-of-prejudice analysis is warranted where:  (1) there is a complete denial of counsel at a critical stage; (2) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) counsel is placed in circumstances in which even a fully competent attorney could not render effective assistance.  *Id.* at 659.

**2.     Constructive absence of counsel – application**

The Court must determine whether Morris was constructively denied counsel due to Wayne County's pre-preliminary examination system, which assigns counsel shortly before the pre-preliminary examination.  ABA Standards provide:

-8-

*U.S. v. Morris*
04-80200

> Defense counsel should seek to establish a relationship of trust and
> confidence with the accused and should discuss the objectives of the
> representation and whether defense counsel will continue to represent
> the accused if there is an appeal. Defense counsel should explain the
> necessity of full disclosure of all facts known to the client for an
> effective defense, and defense counsel should explain the extent to
> which counsel's obligation of confidentiality makes privileged the
> accused's disclosures.
>
> To ensure the privacy essential for confidential communication
> between defense counsel and client, adequate facilities should be
> available for private discussions between counsel and accused.

1 ABA Standard for Criminal Justice 1(a) & (b).

### a.    Time allotted for preparation and consultation with client

In *Mitchell,* the Sixth Circuit held that there was a complete denial of

counsel where the defendant's attorney spent approximately six minutes in the

course of three separate meetings with the defendant in the "bull pen" prior to the

start of  trial.  *Mitchell*, 325 F.3d at 741.  Similarly, in *Hunt v. Mitchell,* 261 F.3d

575, 583 (6th Cir. 2001), the Court found a total absence of counsel where an

attorney was appointed only minutes before trial and had no opportunity to consult

with his client (the plaintiff) or prepare a defense.

At a hearing in this Court on April 6, 2005, an expert witness, Samuel

Churikian, testified that assigned counsel usually meet with their clients for the

*U.S. v. Morris*
04-80200

first time just before the pre-preliminary examination hearing.[6]  This is usually the

client's first notice of any plea offer by the prosecutor.   Mr. Churikian further

testified that there are "lots of problems" with discovery; thus, when making an

evaluation of a case, assigned counsel may not have sufficient information as to

evidentiary issues and preliminary complaint records from individual officers and

witnesses.  Clearly, counsel is in no position at that point to make an evaluation

and give an informed plea recommendation.

At a March 31, 2005, hearing before this Court, Morris's appointed attorney

testified that she received police reports for the case on the day of the pre-

preliminary examination hearing, leaving no time to evaluate the materials or

interview witnesses.  The lack of time and information allotted counsel impeded

her ability to advise Morris.

### b.       Lack of privacy for attorney-client consultation

The Sixth Amendment right to counsel includes the right to confer privately

with one's attorney.  *See, e.g., United States v. Henry*, 447 U.S. 264 (1980), and

*United States v. Rosner,* 485 F.2d 1213 (2nd Cir. 1973).  Governmental intrusions

into confidential lawyer-client communications threaten that right.  *See Geders v.*

*United States*, 425 U.S. 80 (1976).

---

[6]Occasionally, Churikian stated, attorneys are able to meet their clients in the Wayne County
Jail prior to the pre-preliminary examination.  However, it did not happen here.

Morris first met with his attorney on the day of the pre-preliminary exam. They met in the "bull pen," which afforded no privacy, since attorneys, sheriff's personnel, court staff, and other detainees were present. Clearly, this procedure deprived Morris of a meaningful and private communication with his attorney and contributed to a constructive denial of counsel.

> **c.    The penalizing of Morris for exercising his right to counsel by withdrawal of plea offer and institution of federal charges**

It is well-recognized that criminal defendants cannot be penalized for exercising their constitutional rights. In *Griffin v. California*, 380 U.S. 609 (1965), the Supreme Court reversed a conviction based on comments made by the prosecutor and the court regarding the defendant's failure to testify. The Court explained, "[Comment on the refusal to testify] is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." *Id.* at 614. "[W]e find it intolerable that one constitutional right should have to be surrendered in order to assert another." *Simmons v. United States*, 390 U.S. 377, 394 (1968) (holding that testimony given in support of a motion to suppress on Fourth Amendment grounds cannot be used by the state as evidence of a defendant's guilt, unless he makes no objection).

Here, Morris, without the guidance of prepared counsel, rejected the State's plea offer without knowing the consequences. The prosecutor withdrew the offer

-11-

and referred Morris to federal court, where his sentencing potential was more severe than what he faced in state court. Criminal defendants such as Morris who choose to proceed with prepared counsel are penalized by Project Safe Neighborhoods' plea offer - federal referral process.

### d.      Impact of the assigned counsel system

Additionally, the structure of the assigned counsel fee system discourages attorneys from asking for additional time to investigate their cases. Assigned attorneys receive $40 for the pre-preliminary examination if there is no plea agreement. If an adjournment is requested and granted, the attorney still receives only the initial $40. No additional amount is paid for the second appearance. If a defendant rejects a plea and does not waive the subsequent preliminary examination, the state charges are dismissed and then filed in federal court, with the assigned attorney still receiving only $40. On the other hand, if a defendant accepts the State's plea offer, counsel receives a minimum of $500 to $700. This arrangement provides an incentive for assigned counsel to urge a plea, even with knowledge that counsel may lack information to make an informed plea recommendation to the defendant.

More importantly, even if attorneys received more compensation for the pre-preliminary examination, they would not be prepared to render advice to their clients, since the structure and operation of the pre-preliminary examination

prohibits adequate preparation.  Project Safe Neighborhoods, on an *institutional*

level, is a state barrier to counsel for indigent defendants.[7]

### e.      Conclusion

The Court concludes that the practice of assigning counsel within a few days

of the pre-preliminary examination acts as a state impediment to effective

assistance of counsel.[8] Given the lack of time allotted for preparation and

consultation with a client, and the lack of privacy for counsel to confer, counsel

cannot establish an attorney-client relationship, nor function as an attorney.  These

impediments were exacerbated by the practice of requiring an immediate decision

on the plea offer.

### D.      Whether Morris Was Denied the Effective Assistance of Counsel

#### 1.      The standard for evaluating claims of ineffective assistance of counsel

*Strickland v. Washington,* 466 U.S. 668 (1984), governs situations where

counsel is present but ineffective.  The *Strickland* test requires a showing that

(1) counsel's performance fell below an objective standard of reasonableness, and

(2) there is a reasonable probability that, but for the deficient performance, the

---

[7]The Court makes no ruling on the overall adequacy of compensation of assigned counsel in the Wayne County courts.

[8]The same may be true in cases where retained counsel does not have time to prepare.

*U.S. v. Morris*
04-80200

outcome of the proceedings would have been different. *Strickland,* 466 U.S. at

694. "A reasonable probability is a probability sufficient to undermine confidence

in the outcome." *Id.* The first *Strickland* requirement refers to attorney

competence, whereas the second requirement refers to prejudice.

> **2.    Ineffective assistance of counsel – application: misinformation on consequences of rejecting the plea offer**

Criminal defendants have the right to make reasonably informed decisions

regarding plea offers. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (explaining that

the voluntariness of a guilty plea depends on the accuracy of counsel's advice).

Central to such a decision is the character of the proposed sentence.

> Because the Sentencing Guidelines have become a critical, and in
> many cases, dominant facet of federal criminal proceedings . . .
> familiarity with the structure and basic content of the Guidelines
> (including the definition and implications of career offender status)
> has become a necessity for counsel who seek to give effective
> representation.

*United States v. Day*, 969 F.2d 39, 43 (3rd Cir. 1992).[9]  When a defendant receives

incorrect advice regarding her sentencing potential, her ability to make an

---

[9]The federal sentencing regime which had existed for nearly two decades was significantly altered by *United States v. Booker/Fanfan,* 125 S. Ct. 738 (2005), which held that the mandatory application of the Sentencing Guidelines is unconstitutional. *Booker/Fanfan* was promulgated after the relevant events occurred in this case. Although the Guidelines are now advisory, rather than mandatory, it is still incumbent upon attorneys to be familiar with their basic structure and content.

-14-

*U.S. v. Morris*
04-80200

intelligent decision regarding a plea offer is severely undermined.  *Id.*

Here, Morris's attorney was not familiar with the federal sentencing guidelines.  Instead, she relied heavily on what the prosecutor told her regarding Morris's federal sentencing potential.  His actual sentencing potential if he did not plead guilty, 101 to 111 months, was nearly twice the amount of time which was communicated to him, 60 to 68 months.  Despite *Strickland's* strong presumption of attorney competence, the Court finds that the performance of Morris's attorney fell below an objective standard of reasonableness.  *Cf. Griffin v. United States,* 330 F.3d 733, 737 (explaining that failure to notify a client of a plea offer constitutes ineffective assistance under *Strickland*).  Morris relied on this erroneous information to his detriment and suffered prejudice.

### E.    The Significance of the Preliminary Examination

By expediting cases through the use of guilty pleas, Project Safe Neighborhoods aims to alleviate jail overcrowding.  What is overlooked in this expedited process is the significance of the preliminary examination.  The preliminary examination serves many functions.  *People v Duncan*, 388 Mich 489, 201 N.W.2d 629 (1972), *overruled in part by People v. Glass*, 464 Mich 266, 627 N.W.2d 261 (2001).  The two most important are: (1) as a screening device to reduce the chances of prosecuting and convicting an innocent person, i.e., to determine whether probable cause exists, and (2) to inform both the prosecutor and

*U.S. v. Morris*
04-80200

defense counsel of the strengths of their respective cases.

The goal of the criminal justice system is to protect society by convicting the guilty, while reducing the chances of depriving innocent citizens of their liberty. The obvious cases where there is overwhelming evidence or no evidence are self explanatory. The additional value to both sides of knowing the strengths of their respective cases furthers the goal of efficiently separating the innocent from the guilty.

As to the second function of the preliminary examination, it is the usual situation that both the prosecutor and defense counsel may see the witnesses for the first time. Both sides will be able to test the stories provided by their respective clients against the facts presented by the witnesses, while also being able to evaluate the strength of the witnesses. This is especially helpful for defense counsel in those cases where clients have maintained their innocence. If, in fact, that is true, it may be apparent at the preliminary examination. If it is not true, the opportunity for the defendant to see the strength of the case may convince her to "come clean" and get the best deal. *See Robinson v. Stegall,* 343 F. Supp. 2d 626, 638 (E.D. Mich. 2004).[10]

In those cases where the defendant claims innocence and is not convinced by

_____

[10]The post-remand decision in this case was not appealed.

*U.S. v. Morris*
04-80200

the witnesses, the value of the preliminary examination for the defense is to have

on record the testimony of the witnesses.  This is vital for both preparation and

possibly impeachment.

The value for the prosecutor is twofold.  First, the preliminary examination

serves to preserve testimony to be used in the event of the unavailability of a

witness for trial.  Next, it alleviates the necessity of trials in the vast majority of

cases where a guilty plea ensues.

It is important to note the large number of cases wherein the police work

results in the arrest of the guilty person, who confides in counsel that he is guilty.

In those cases, the role of counsel, after thorough investigation, is to obtain the best

deal either by agreeing to an early plea or by cooperating with the prosecutor or

both.  *See id.*  To avoid the important roles of the preliminary exam as a cost

saving measure is false economy which undermines the important protections

which exist to protect the innocent and achieve appropriate results.

Finally, it is important to remember the judiciary's role and goal in the

criminal justice system is to protect citizens' constitutional rights.  The criminal

justice system seeks to protect society by enforcing the laws in an efficient manner.

The cost to the State is a valid state interest.  *Halbert v. Michigan,* 125 S. Ct. 2582,

2594 (2005).  However, as *Halbert* held, the cost savings cannot trump the

Constitution.  That is, if the State attempts to contain the cost by imposing a new

-17-

procedure, the pre-preliminary examination, that procedure has to be within the limits of the Constitution.  It is not.[11]

### F.     The Appropriate Remedy

A remedy "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."  *United States v. Morrison,* 449 US 361, 364 (1981).  "[T]he remedy for counsel's ineffective assistance should put the defendant back in the position he would have been in if the Sixth Amendment violation had not occurred".  *United States v. Blaylock*, 20 F.3d 1458, 1468 (9th Cir. 1994).  *See also United States v. Allen,* 53 Fed. Appx. 367, 373-74 (6th Circuit, 2005) (unpublished) (explaining that the remedy is the same where counsel has been denied).

Several courts have held that, where a defendant was deprived, by ineffective assistance of counsel, of an opportunity to accept a plea offer, the appropriate remedy is reinstatement of the original offer.  *See Blaylock,* 20 F.3d at 1468; *United States v. Nixon*, 315 F. Supp. 2d 876 (E.D. Mich. 2004); and *Satterlee v. Wolfenbarger*, __ F. Supp. 2d __, 2005 WL 1490479 (E.D. Mich. Jun. 23, 2005).  This Court agrees that dismissing federal charges and then reinstating the State's plea offer is the only appropriate remedy for the violation of Morris's

---

[11]It is difficult from the record to determine by what authority – legislative, executive, or judicial – the pre-preliminary examination was created.  However, that is irrelevant, since it does not comport with the United States Constitution.

*U.S. v. Morris*
04-80200

constitutional rights.

If (a) the State chooses to re-prosecute, but does not renew the plea offer, and (b) Morris forgoes the right to trial and receives a sentence greater than he would have received pursuant to the original plea offer, there might be grounds for state appellate relief, or ultimately, federal review of that decision.

### IV. CONCLUSION

Because the state and federal authorities were acting jointly, the conduct of the state authorities is subject to this Court's jurisdiction. The Court hereby rules as follows:

- The pre-preliminary examination was a critical stage of the proceedings to which the Sixth Amendment right of counsel attached.

- The lack of time for Morris's attorney to prepare and consult with her client, and the lack of privacy for consultation, amounted to a constructive denial of the right of counsel.

- Morris's attorney was constitutionally ineffective for giving incorrect advice regarding his federal sentencing potential. Morris suffered prejudice as a result of the attorney error.

*U.S. v. Morris*
04-80200

Therefore, the case is hereby **DISMISSED** and **REMANDED** to state court for

reinstatement of the original plea offer.

  **IT IS SO ORDERED.**


  <u>s/Arthur J. Tarnow</u>
  **Arthur J. Tarnow**
  **United States District Judge**

**Dated:  July 20, 2005**